UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

UNITED STATES OF AMERICA,

        Plaintiff,

     v.

JOHN THAT LUONG et al.,

        Defendants.

_____/

NO. CR. 99-433 WBS GGH

MEMORANDUM AND ORDER RE: POST-TRIAL MOTIONS

----oo0oo----

I.   Factual and Procedural Background

      In a nine-count indictment, the grand jury alleged that certain named defendants conspired to commit robberies affecting interstate commerce in violation of the Hobbs Act, 18 U.S.C. § 1951(a), involving a jewelry store named Phnom Pich (Count 1), a computer business named Diamond Flower Electric Instruments Ltd. ("DFI") (Counts 4 and 8), and a second computer business named Amador Systems International Inc. ("Amador") (Count 6).  The indictment also alleged that certain defendants used firearms during these conspiracies in violation of 18 U.S.C. § 924(c) (Counts 2, 5, 7, and 9) and that, with respect to the Phnom Pich

1

conspiracy, the use of a firearm resulted in the death of a person in violation of 18 U.S.C. § 924(j) (Count 3).

Defendants Thy Chann, Hoang Nguyen, and Son Van Nguyen were tried in an earlier trial that concluded on June 9, 2003. The trial of the remaining defendants ended on December 14, 2007. At the conclusion of the second trial, the jury returned guilty verdicts against defendants John That Luong and Minh Huynh on all nine counts.  As to defendant Thongsouk Theng Lattanaphon, the jury returned guilty verdicts on all counts except Counts 4 and 5, which had only been alleged against Luong and Huynh.  As to defendant Hoang Ai Le, the jury returned guilty verdicts on Counts 8 and 9 and not-guilty verdicts on Counts 1 through 3; Le had not be charged in Counts 4 through 7.

Following the second trial, the court granted defendants' requests to extend the deadline to file post-trial motions to January 29, 2008.  Presently before the court are defendants' motions for acquittal pursuant to Federal Rule of Criminal Procedure 29 and a new trial pursuant to Federal Rule of Criminal Procedure 33.

During the course of trial, the court ruled on many of the issues raised by these motions, and the court adopts those rulings and the reasons previously given in support thereof. This Memorandum and Order is intended to elaborate and expand upon those rulings and respond to any specific arguments raised in the post-trial motions that were not previously addressed.

II.  <u>Discussion</u>

Federal Rule of Criminal Procedure 29 instructs that "the court on the defendant's motion must enter a judgment of

acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a).  If the jury has returned a guilty verdict, the court "may set aside the verdict and enter an acquittal."  Id. 29(c)(2).  In ruling on a Rule 29 motion, the court must "[v]iew[] the evidence in the light most favorable to the government" and "determine whether any rational jury could have found [the defendant] guilty of each element of the crime beyond a reasonable doubt."  United States v. Esquivel-Ortega, 484 F.3d 1221, 1224 (9th Cir. 2007) (citing United States v. Ruiz, 462 F.3d 1082, 1088 (9th Cir. 2006)).

Federal Rule of Criminal Procedure 33 provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).  The burden of justifying a new trial rests with the defendant, see United States v. Endicott, 869 F.2d 452, 454 (9th Cir. 1989), and a "motion for new trial is directed to the discretion of the judge," United States v. Pimentel, 654 F.2d 538, 545 (9th Cir. 1981); accord United States v. Mack, 362 F.3d 597, 600 (9th Cir. 2004).  "A district court's power to grant a motion for a new trial is much broader than its power to grant a motion for judgment of acquittal," United States v. Alston, 974 F .2d 1206, 1211 (9th Cir. 1992), as a "new trial may be granted by the district court when the 'interest of justice so requires,'" United States v. Moses, 496 F.3d 984, 987 (9th Cir. 2007) (quoting Fed. R. Crim. P. 33(a)).

A.   Hoang Ai Le's Rule 29 and Rule 33 Motions (Docket No. 1122)

Pursuant to Federal Rule of Criminal Procedure 29, Le

3

moves for a judgment of acquittal on Counts 8 and 9.  In support
of his motion, Le first contends that the evidence against him
"was based almost entirely on the testimony of cooperating
witness Vanthieng Van Di."  (Docket No. 1122 at 3:5-6.)  After
reviewing the record, it is clear that Van Di's testimony was not
wholly lacking in corroboration as to Le's participation in the
conspiracy alleged in Count 8 and the associated charge in Count
9.  As the Government relates in its opposition to Le's Rule 29
motion, the testimony of Le's girlfriend, Goldie Lee, along with
certain cellular telephone records and intercepted telephone
conversations, also provided evidence to support Le's
convictions.  (Docket No. 1161 at 5:6-24; <u>see also</u> Trial Tr. Oct.
17, 2007, 140:2-20.)

Furthermore, it is well-established that even "the
uncorroborated testimony of a co-conspirator is sufficient
evidence to sustain a conviction 'unless the testimony is
incredible or unsubstantial on its face.'"  <u>United States v.</u>
<u>Ramirez-Robles</u>, 386 F.3d 1234, 1241 (9th Cir. 2004) (quoting
<u>United States v. Lopez</u>, 803 F.2d 969, 973 (9th Cir. 1986)); <u>see</u>
<u>United States v. Coleman</u>, 525 F.3d 665, 666 (8th Cir. 2008) ("We
have repeatedly upheld jury verdicts based solely on the
testimony of co-conspirators and cooperating witnesses, noting
that it is within the province of the jury to make credibility
assessments and resolve conflicting testimony.").  Because there
is no suggestion that Van Di's testimony was "incredible or
unsubstantial" as a matter of law, it remained "the jury's
prerogative as the finder-of-fact to believe [Van Di's]
testimony."  <u>Ramirez-Robles</u>, 386 F.3d at 1241.

1    Le further argues that although the Government
2  presented evidence that a cellular telephone owned by Le's
3  girlfriend was "roaming" in Sacramento during the time of the
4  robbery alleged in Count 8, the Government failed to "present any
5  evidence that Mr. Le was the person holding or using [the] cell
6  phone at the time it was roaming in Sacramento." (Docket No.
7  1122 at 3:20-21.)  The evidence at trial, however, indicated that
8  Le shared the cellular telephone with his girlfriend and that she
9  was unlikely to have been in Sacramento at the time of the
10  robbery (<u>see</u> Trial Tr. Oct. 17, 2007, 140:2-20); therefore, the
11  "roaming" of this cellular telephone at the time and in the
12  general location of the alleged robbery provides circumstantial
13  evidence of Le's involvement in the crime.  Simply because this
14  particular evidence is circumstantial in nature does not provide
15  sufficient basis to upend the jury's verdict.  <u>See, e.g.</u>, <u>United</u>
16  <u>States v. Dunmire</u>, 403 F.3d 722, 724 (10th Cir. 2005) ("Because
17  conspiracies are, by definition, secretive, elements of the crime
18  are often established through circumstantial evidence.").

19    Le finally contends that "there was no evidence that
20  the robbery 'plan' to which Mr. Le and the other co-conspirators
21  allegedly conspired to commit included any plan to steal any keys
22  to the DFI business." (Docket No. 1122 at 3:24-25.)  Le's
23  argument implicitly assumes that the Government was required to
24  prove a conspiracy to steal keys to DFI as opposed to a
25  conspiracy to steal the goods housed at DFI.  As more fully
26  discussed <u>infra</u> in Subsection II.B, however, the Government was
27  not confined to this manner of proving conspiracy to commit
28  Hobbs-Act robbery.

1          Even if the Government were limited to proving a

2   conspiracy to commit Hobbs-Act robbery by the stealing of keys to

3   DFI, the Government presented sufficient evidence whereby a

4   rational jury could conclude that the conspiracy included a plan

5   to steal these keys.  For example, in the Government's direct

6   examination of Van Di, the following testimony was elicited:

7       **Q.**   [Mady Chan] introduced you to Shorty?
        **A.**   Yes.
8       **Q.**   And do you see Shorty in the courtroom today?
        **A.**   Yes.
9       **Q.**   Who is Shorty?
        **A.**   Five. He's the fifth person from left.
10
        **THE COURT:**  The record will reflect that he has
11           identified the Defendant Hoang Ai Le.

12      **Q.**   **BY MR. WONG:** And when he introduced you to Shorty
             and Le, were there other introductions to other
13           people there, too?
        **A.**   Yes, but I don't--I don't remember their name.
14           It's about, like, four--four other individual that
             was in that--in that room.
15      **Q.**   **BY MR. WONG:** So what did he say what these crew
             members were going to do?    What was their
16           responsibility?
        **A.**   Well, first of all, he said--Mady said that--There,
17           this is my people and just do your job.   And he
             said, I will do--I will do my job.   And--and when
18           you get the alarm code, <u>when you get the key</u>, when
             you get whatever necessary to get into that DFI
19           company, then these people is going to go with you
             and--to help you unload the products into the
20           truck.
             So I ask him, Hey, where's the truck?   You
21           know, DFI is a big company.   So I say, Where?
             Where the truck?  He said, No, no, no, don't worry
22           about that thing, you know.   Just--I will take care
             of that.   Just worry about your job, and I will do
23           my job.   And that's the end of it.
        **Q.**   So Hoang Ai Le and these other individuals were
24           part of the transport team; is that correct?
        **A.**   Yes, according to Mady.
25      **Q.**   And when Mady said this, was this in the presence
             of Hoang Ai Le?
26      **A.**   Yes.
        **Q.**   And did he protest and ever say I'm not part of the
27           transport team, I have nothing to do with this?
        **A.**   No, he didn't say anything.   <u>He just--you know,</u>
28           <u>just listen, just--you know, just nod his head</u>

                                    6

1        <u>okay.</u>

2   (Trial Tr. Oct. 31, 2007, 64:10-66:5 (emphasis added).)  In light

3   of this testimony, a rational jury could conclude that Le was

4   fully aware that stealing the keys to DFI was an objective of the

5   conspiracy and that he agreed to pursue this objective.  <u>See</u>

6   <u>United States v. Sullivan</u>, 522 F.3d 967, 976 (9th Cir. 2008)

7   ("'The agreement need not be explicit; it is sufficient if the

8   conspirators knew or had reason to know of the scope of the

9   conspiracy and that their own benefits depended on the success of

10  the venture.'" (quoting <u>United States v. Montgomery</u>, 384 F.3d

11  1050, 1062 (9th Cir. 2004))); <u>see also</u> <u>United States v. Wright</u>,

12  215 F.3d 1020, 1028 (9th Cir. 2000) ("Once the existence of a

13  conspiracy is established, evidence establishing beyond a

14  reasonable doubt even a slight connection of a defendant with the

15  conspiracy is sufficient to convict the defendant of knowing

16  participation.").

17        Le also moves for a new trial pursuant to Federal Rule

18  of Criminal Procedure 33.  Le raises no additional grounds in

19  support of this motion, noting only that such a motion may be

20  granted even where "the [court] does not find the evidence

21  insufficient to sustain the verdict."  (Docket No. 1112 at 4

22  (citing <u>United States v. Pimentel</u>, 654 F.2d 538, 545 (9th Cir.

23  1981).)  A motion for a new trial, however, "should be granted

24  'only in exceptional cases in which the evidence preponderates

25  heavily against the verdict.'"  <u>United States v. Rush</u>, 749 F.2d

26  1369, 1371 (9th Cir. 1984) (quoting <u>Pimentel</u>, 654 F.2d at 545).

27  After reviewing the totality of the evidence presented in this

28  case against Le, the court finds that a new trial is unwarranted.

7

1    Accordingly, Le's motions pursuant to Rules 29 and 33
2  (Docket No. 1122) will be denied.

3    B.   <u>John That Luong's Rule 29 Motion (Docket No. 1129)</u>

4    Luong moves for a judgment of acquittal pursuant to
5  Federal Rule of Criminal Procedure 29.  In support of his motion,
6  Luong first contends that no rational jury could find that the
7  robberies of the businesses named in the indictment were the
8  objects of the conspiracies in Counts 1, 4, 6, and 8 because
9  there was no evidence that defendants planned to steal property
10 from the businesses in the "presence" of anyone.  (Docket No.
11 1168 at 1.)  Rather, he argues, the evidence adduced at trial
12 showed that defendants planned to coerce owners or employees at
13 locations away from the businesses to obtain alarm codes and door
14 keys; using the alarm codes and keys, defendants would then steal
15 property from these businesses at night when they were closed and
16 unoccupied.  (<u>Id.</u>)

17   Accepting <u>arguendo</u> Luong's characterization of the
18 evidence, his contention still fails.  The Hobbs Act defines
19 "robbery" as

20        the unlawful taking or obtaining of personal property
           from the person or in the presence of another, against
21        his will, by means of actual or threatened force, or
           violence, or fear of injury, immediate or future, to his
22        person or property, or property in his custody or
           possession, or the person or property of a relative or
23        member of his family or of anyone in his company at the
           time of the taking or obtaining.
24

25 18 U.S.C. § 1951(b)(1).  Under this statute, "property is in the
26 presence of a person if it is so within his reach, inspection,
27 observation or control, that he could if not overcome by violence
28 or prevented by fear, retain his possession of it."  <u>United</u>

States v. Burns, 701 F.2d 840, 843 (9th Cir. 1983) (internal quotation marks omitted).  As several courts have instructed, "presence" is not a matter of eyesight; rather, the principal question is whether, "had the [victim] not been subjected to violence or intimidation by the robber, he could have prevented the taking." United States v. Lake, 150 F.3d 269, 272 (3d Cir. 1998) (quoting Wayne R. LaFave & Austin W. Scott, Substantive Criminal Law § 8.11 at 433 (1986)); see United States v. Boucha, 236 F.3d 768, 772 (6th Cir. 2001).

The Third Circuit's decision in Lake, which adopted the Ninth Circuit's definition of "person or presence" in Burns, is illustrative.  In Lake, the defendant demanded the victims' keys at gunpoint at a beach and then proceeded up a steep path away from the beach to the victims' parked car.  150 F.3d at 272. After some initial hesitation, the victims pursued the defendant up the path, arriving just in time to see him drive off.  Id. at 272-73.  In upholding the defendant's robbery conviction, the Third Circuit reasoned that a rational jury could have found that the victims might have prevented the defendant from taking the car had they not hesitated out of fear that the defendant would harm them.  Id. at 273.  Therefore, a rational jury could conclude that the car was taken from their presence.  Id.; see United States v. Kimble, 178 F.3d 1163, 1168 (11th Cir. 1999) ("Had Wilcher not been in fear for his safety, he could have reached the car and prevented its taking.  Thus, his car was within his 'presence' when Blount and Kimble robbed him of it."). In the instant case, a rational jury could similarly conclude that, but for the violence and intimidation applied to the

9

1 victims in their homes, they could have prevented defendants from

2 taking goods from their businesses.

3          Although <u>dicta</u> in the Eleventh Circuit's <u>Kimble</u>

4 decision may weaken this conclusion, the hypothetical presented

5 in that case is distinguishable.  In <u>Kimble</u>, the Eleventh Circuit

6 stated,

7          It would not . . . be robbery to use fear or intimidation
           to immobilize a victim while an accomplice steals the
8          victim's property from a site several miles away.  Under
           that scenario, the property is far enough away that the
9          victim, even if free from intimidation or fear, could not
           prevent its taking.

10

11 <u>Kimble</u>, 178 F.3d at 1167.  Unlike this hypothetical, certain

12 defendants in the instant case were required to travel from the

13 victims' homes with keys and alarm codes to the businesses in

14 order to accomplish the theft.  Therefore, it is incorrect to

15 conclude that the victims in this case, "even if free from

16 intimidation or fear, could not prevent" the taking.  Rather,

17 absent intimidation or fear, the victims could have reached their

18 businesses just as easily as defendants in order to prevent the

19 taking.  <u>See, e.g.</u>, <u>People v. Webster</u>, 54 Cal. 3d 411, 440 (1991)

20 (affirming a robbery conviction involving the theft of a vehicle

21 a quarter mile away from the victim because "the robbers were on

22 foot, and they were no closer to the car at the moment they

23 assaulted Burke than was Burke himself").  Thus, this case is

24 properly considered to be congruous to the situation in <u>Lake</u>, and

25 a rational jury could have properly found that the "presence"

26 requirement of Hobbs-Act robbery was satisfied.

27          Furthermore, even assuming that the "presence" element

28 would not be satisfied with respect to goods taken from the

businesses, the Government adduced evidence showing that

defendants planned to take other property from the victims'

presence, namely keys to the businesses.[1]  Although Luong

contends that these keys cannot constitute "property" for

purposes of Hobbs-Act robbery, the weight of authority is against

him.  See, e.g., Tarver v. State, 278 Ga. 358, 360 (2004) ("Even

assuming arguendo that the wallet was empty when Tarver removed

it from the victim, 'the offense of armed robbery is committed

merely by the armed taking of the "property of another,"

regardless of whether its value is great or small.'" (quoting

Bell v. State, 227 Ga. 800, 801 (1971)); State v. Goodley, 820

So.2d 478, 483 (La. 2002) ("Proof of value in not a necessary

element of robbery, as the offender's use of force or

intimidation against the victim to accomplish the taking is the

aspect of the crime that the legislature intends to punish.").

A rational jury, moreover, could reasonably conclude

that the taking of these keys provided a sufficient nexus with

interstate commerce to satisfy the Hobbs Act.  "To establish the

interstate commerce element of a Hobbs Act charge, the government

need only establish that a defendant's acts had a de minimis

effect on interstate commerce."  United States v. Lynch, 437 F.3d

---

[1]     On several occasions, the Government has argued that
the businesses' alarm codes also constitute "property" for
purposes of Hobbs-Act robbery.  See, e.g., United States v.
Zemek, 634 F.2d 1159, 1174 (9th Cir. 1980) ("The concept of
property under the Hobbs Act has not been limited to physical or
tangible 'things.'").  Defendants have insisted, however, that
cases involving intangible property have been limited to those
involving Hobbs-Act extortion.  Because the Government has
adduced sufficient direct and circumstantial evidence to permit a
rational jury to infer that the taking of keys from individual
victims was an object of the charged conspiracies, the court need
not address this novel issue.

902, 908 (9th Cir. 2006) (en banc).  "The interstate nexus
requirement is satisfied 'by proof of a probable or potential
impact' on interstate commerce."  Id. at 909 (quoting United
States v. Huynh, 60 F.3d 1386, 1389 (9th Cir. 1995)).  Here, a
rational jury could conclude that the taking of the keys
"cause[d] or create[d] the likelihood" that defendants would
"deplete the assets of an entity engaged in interstate commerce,"
id. at 905, for the Government adduced sufficient evidence at
trial to demonstrate that the target businesses were engaged in
interstate commerce.[2]

Accordingly, Luong's motion pursuant to Rule 29 (Docket
No. 1129) will be denied.

C.   John That Luong's Rule 33 Motion (Docket No. 1130)

Luong moves for a new trial pursuant to Federal Rule of
Criminal Procedure 33, alleging several instances of
prosecutorial misconduct and taking issue with the court's jury
instruction on evidence admitted under Federal Rule of Evidence
404(b).

As to Luong's allegations of prosecutorial misconduct,
he states that the prosecutor (1) accused counsel and their
clients of "a preplanned, concerted effort to have Kevin

_____

[2]   Luong argues that there was insufficient evidence for a
rational jury to conclude that Phnom Pich was engaged in
interstate commerce.  However, the Government adduced evidence
showing that Phnom Pich made purchases in interstate commerce
from companies such as RNT Diamond Importers, Meirov Brothers,
Prime Time, and Milpitas Gold & Silver, as well as a business in
Hong Kong.  (See Gov't Exs. 81, 81A, 81B, 98-102.)  Consequently,
a rational jury could find beyond a reasonable doubt that the
conspirators' theft of the keys to Phnom Pich in order to steal
the goods housed therein would have a "probable or potential
impact" on interstate commerce.

Lattanaphon testify falsely"; (2) argued that Luong "should have called a witness to testify but failed to do so"; (3) argued certain facts that were not in evidence; (4) misstated the definition of Hobbs-Act robbery to include concealment of the crime; and (5) misstated the element of Hobbs-Act robbery requiring that property be taken from a person or person's presence.  (Docket No. 1129 at 2.)  Luong's counsel raised each of these objections during trial, and the court overruled them. (Trial Tr. Dec. 4, 2007, 94:14-95:17 (as to argument 1); id. at 99:23-101:3 (as to argument 2); id. at 5:1-6, 6:13-20, 101:19-25 (as to argument 3); id. at 63:17-67:20, 73:14-75:22 (as to argument 4); id. at 78:20-89:3 (as to argument 5).)  For the same reasons articulated at that time, the court again rejects Luong's arguments.

As to the court's jury instruction on Federal Rule of Evidence 404(b), Luong argues that the instruction was "erroneous" because it was "vague and ambiguous."  (Docket No. 1129 at 11.)  The instruction stated,

> You have heard evidence of other crimes engaged in by one or more of the defendants.  You may consider evidence of any other crimes engaged in by a defendant only as it bears on the issues in this case as defined by these instructions, and for no other purpose.

(Jury Instructions (Docket No. 1071) at 13.)

The court and the parties discussed at length the proper phrasing of this instruction in this case.  (See Trial Tr. Nov. 15, 2007, 5:18-8:1.)  Some defendants requested that the instruction specifically characterize this evidence as that of "criminal activity in connection with the PKI company in Los Angeles engaged in by JOHN THAT LUONG, MINH TRONG HUYNH, and

13

THONGSOUK LATTANAPHON." (Docket No. 1016 at 5:3-7; Trial Tr.
Nov. 15, 2007, 7:7-12.)  Other defendants, however, wanted a more
generic instruction regarding Rule 404(b) that would not directly
implicate them with respect to the PKI robbery. (Trial Tr. Nov.
15, 2007, 7:14-19.)

        After carefully considering the parties' arguments, the
court prepared the aforementioned instruction to accommodate
their concerns to the extent consistent with the law.  No
objection was raised concerning the court's instruction.
Ultimately, after reviewing this instruction in light of the
remaining jury instructions and in the context of the trial as a
whole, the court concludes that the possible shortcomings
identified by Luong do not merit a new trial.  (<u>See, e.g.</u>, Jury
Instructions (Docket No. 1071) at 12, 14); <u>see also</u> <u>United States</u>
<u>v. Kenny</u>, 645 F.2d 1323, 1337 (9th Cir. 1981) ("Again, we find
that this instruction, viewed in the context of the remaining
instructions, adequately covered the defense theory, guarding
against guilt by association."); <u>United States v. Nace</u>, 561 F.2d
763, 768 (9th Cir. 1977) ("In the context in which the matter was
presented to the court, however, the cautionary instructions
were, if not perfect, adequate.").

        Finally, in a "Supplemental Memorandum of Points and
Authorities," Luong also requests a new trial on the grounds that
the court failed to instruct the jury on his theory of the
defense and permitted a constructive amendment to the indictment.
(Docket No. 1234.)  As to the former argument, Luong contends
that he was entitled to a "specific pinpoint instruction about
how far the distance between the act of taking and the

                                14

application of 'force [or] fear' could be [to] fall within the
zone of 'immediate presence' as described by . . . <u>Kimble</u>." (<u>Id.</u>
at 5:9-14.)   As discussed previously, however, the "presence"
element of robbery is not a matter of eyesight; rather, the
principal question is whether, "had the [victim] not been
subjected to violence or intimidation by the robber, he could
have prevented the taking." <u>Lake</u>, 150 F.3d at 272.   Even in
<u>Kimble</u>, which declared in <u>dicta</u> that a theft occurring "several
miles away" from a victim would not constitute robbery, the
absolute distance between the theft and the victim was not
determinative; rather, the issue was whether the distance made it
impossible for the victim to prevent the taking. <u>See</u> 178 F.3d at
1168.   Therefore, a "specific pinpoint instruction" as to "how
far the distance could be" to satisfy the "presence" element of
robbery would be improper, as even seemingly large distances can
suffice in certain circumstances. <u>See, e.g.</u>, <u>People v. Webster</u>,
54 Cal. 3d 411, 440 (1991) (affirming a robbery conviction where
the use of force on the victim was a "quarter of a mile" from the
victim's property because "the robbers were on foot, and . . .
were no closer to the [victim's property] at the moment they
assaulted [the victim] than [the victim] himself").

       As to Luong's constructive-amendment argument, the
Ninth Circuit instructs that an amendment to the indictment
occurs "when the charging terms of the indictment are altered,
either literally or in effect, by the prosecutor or a court after
the grand jury has last passed upon them." <u>United States v.</u>
<u>Adamson</u>, 291 F.3d 606, 614 (9th Cir. 2002).   Typically, the Ninth
Circuit has found a constructive amendment to the indictment

where

> (1) there is a complex of facts [presented at trial] distinctly different from those set forth in the charging instrument, or (2) the crime charged [in the indictment] was substantially altered at trial, so that it was impossible to know whether the grand jury would have indicted for the crime actually proved.

Id. at 615 (internal quotation marks omitted) (alteration in original).

Here, the language in the indictment is sufficiently general to encompass the theory that the Government argued to the jury during closing arguments, namely, that the keys to the subject businesses could constitute the relevant property for purposes of conspiracy to commit robbery under the Hobbs Act. (See Docket No. 1234 at 7-11; Trial Tr. Nov. 27, 2007, 47:8-48:15.)  The counts in the indictment alleging conspiracy to commit Hobbs-Act robbery collectively read as follows:

> On or about [January 25, 1996 (Count 1), December 22, 1995 (Count 4), January 17, 1996 (Count 6), and January 20, 1996 (Count 8)], in the [Counties of San Joaquin (Count 1) and Sacramento (Counts 4, 6, and 8)] and Eastern District of California, defendants . . . did knowingly and unlawfully agree and conspire to obstruct, delay, and affect commerce as that term is defined in Title 18, United States Code, Section 1951, and the movement of articles and commodities in such commerce, by armed robbery as that term is defined in Title 18, United States Code, Section 1951, by threatening physical violence against another person, to wit: the owners and employees of [Phnom Pich (Count 1), DFI (Counts 4 and 8), and Amador (Count 6), companies that do] business in foreign and interstate commerce.

(Indictment (Docket No. 1) at 2:8-21, 4:22-5:5, 6:8-20, 7:24-8:9.)

In light of these broad allegations, the Government was not prevented from arguing that the "property" sought in the alleged conspiracies included the keys to the respective

16

businesses; rather, such a theory is consistent with the terms of the indictment. <u>See</u> <u>Adamson</u>, 291 F.3d at (providing that a constructive amendment occurs "when the charging terms of the indictment are <u>altered</u>, either literally or in effect" (emphasis added)); <u>see, also, e.g.</u>, <u>United States v. Morgenstern</u>, 933 F.2d 1108, 1115 (2d Cir. 1991) ("[W]here a generally framed indictment encompasses the specific legal theory or evidence used at trial, no constructive amendment occurs."); <u>cf.</u> <u>United States v. Weissman</u>, 899 F.2d 1111, 1115 (11th Cir. 1990) (noting that, to avoid a constructive amendment, "[t]he government in styling the indictment could have used the general language of the statute to refer to the enterprise in which appellants allegedly were involved").

Accordingly, Luong's motion for a new trial (Docket No. 1130) will be denied.

D.   <u>Thongsouk Lattanaphon's Rule 29 and Rule 33 Motions (Docket No. 1131)</u>

Lattanaphon moves for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29 on Counts 1, 2, 3, 8, and 9.  He first contends that the Government failed to adduce evidence sufficient to prove conspiracy to commit Hobbs-Act robbery because certain testimony demonstrated that the "'object' of the conspiracies . . . was to steal jewelry . . . or computer parts . . . located at the respective businesses at night while the businesses were closed and unoccupied . . . ." (Docket No. 1131 at 2:5-12.)  This contention was thoroughly discussed with respect to Luong's Rule 29 motion, <u>see</u> <u>supra</u> Section II.B, and for the same reasons stated therein the court must reject

1 Lattanaphon's argument.[3]

2      Lattanaphon further contends that there was
3 insufficient evidence to demonstrate his knowledge of the objects
4 of the charged conspiracies.  Lattanaphon's argument, however, is
5 belied by the record.  (See, e.g., Trial Tr. Oct. 17, 2007,
6 181:1-186:15 (identifying Lattanaphon as one of the "robbery
7 crew" members who would take the owner of Phnom Pich and his
8 family "hostage" in order to get "the key to the store, the alarm
9 code[,] and the combination for the safe"); id. Oct. 30, 2007,
10 154:23-156:4, 172:7-177:20 (identifying Lattanaphon as "in
11 agreement . . . to do a home invasion robbery of the owner's home
12 in an effort to get into the jewelry store to deplete the jewelry
13 store of its money and jewelry"); id. Oct. 31, 2007, 54:12-57:17,
14 63:1-65:20, 69:20-72:3, 73:20-74:23, 78:1-25, 84:1-18
15 (identifying Lattanaphon as a member of the DFI robbery crew that
16 had planned "to go into the owner's house and extract some
17 information from him, alarm codes, the key to the company" and
18 then "go back . . . and open the company").)

19      Once the Government adduced sufficient evidence to
20 demonstrate the existence of a conspiracy, it needed only to
21 present "evidence establishing beyond a reasonable doubt" that
22 Lattanaphon had "a slight connection . . . with the conspiracy"

23

24      [3] Lattanaphon's related contention that "the government
failed to prove that the conspiracy . . . included an agreement
25 to steal any tangible property other than jewelry . . . or
computer parts" (Docket No. 1131 at 4:18-22) is also foreclosed
26 by that prior discussion; the Government was not required to
prove anything more than a conspiracy to steal jewelry or
27 computer parts, and even if it were, it also adduced sufficient
evidence to demonstrate that the conspiracy included a plan to
28 steal keys to the subject businesses in order to obtain the goods
housed therein.  See supra Section II.B.

1  in order "to convict [him] of knowing participation." <u>United</u>

2  <u>States v. Wright</u>, 215 F.3d 1020, 1028 (9th Cir. 2000).  In light

3  of the evidence adduced at trial, a rational jury could conclude

4  that the Government met this burden.

5          Relying on the case <u>Stirone v. United States</u>, 361 U.S.

6  212 (1960), Lattanaphon also moves for a judgment of acquittal on

7  Count 1 because the indictment alleged that Phnom Pich "engaged

8  in the <u>sale</u> of jewelry and other products in foreign and

9  interstate commerce," but the evidence adduced at trial only

10 demonstrated that the business "<u>purchased</u> goods or services in

11 interstate commerce." (Docket No. 1131 at 3 (emphasis added);

12 <u>see</u> Indictment (Docket No. 1) at 2.)

13         Lattanaphon's reliance on <u>Stirone</u> is misplaced.

14 <u>Stirone</u> has come to be recognized as prohibiting constructive

15 amendments to the indictment.  <u>See, e.g.</u>, <u>United States v.</u>

16 <u>Adamson</u>, 291 F.3d 606, 614 (9th Cir. 2002); <u>United States v.</u>

17 <u>Antonakeas</u>, 255 F.3d 714, 721 (9th Cir. 2001).  A constructive

18 amendment to the indictment, however, typically involves "a

19 complex of facts [presented at trial] distinctly different from

20 those set forth in the charging instrument." <u>Adamson</u>, 291 F.3d

21 at 615 (9th Cir. 2002) (quoting <u>United States v. Von Stoll</u>, 726

22 F.2d 584, 586 (9th Cir. 1984)).  In contrast, courts have

23 generally found only a "variance" where the "indictment and the

24 proof involve only a single, though materially different, set of

25 facts." <u>Id.</u> (citing <u>Von Stroll</u>, 726 F.2d at 586; <u>United States</u>

26 <u>v. Tsinhnahijinnie</u>, 112 F.3d 988, 990-92 (9th Cir. 1997); <u>United</u>

27 <u>States v. Olson</u>, 925 F.2d 1170, 1175 (9th Cir.1991); <u>Jeffers v.</u>

28 <u>United States</u>, 392 F.2d 749, 752-53 (9th Cir. 1968)).  A variance

will only be fatal where it "affect[s] the substantial rights of the defendant." Id. (citing Von Stroll, 726 F.2d at 587).

Here, there is one set of facts with a single possible divergence: whether Phnom Pich purchased goods in interstate commerce or sold goods in interstate commerce. This minor variance is not fatal, however, as it did not cause the indictment to fail to "inform a defendant of 'what he is accused of doing in violation of the criminal law, so that he can prepare his defense.'" Id. (quoting Tsinhnahijinnie, 112 F.3d at 991); see, e.g., Von Stoll, 726 F.2d at 586 (finding a nonfatal variance where the indictment charged the defendant with "transporting in interstate commerce $10,000 that was taken by fraud from Ron McCallum," but the evidence and jury instructions allowed the jury to convict the defendant of taking $10,000 from McCallum's business partner); Olson, 925 F.2d at 1174-75 (finding a nonfatal variance in a mail fraud prosecution where the indictment charged "a scheme to defraud and to obtain money," but the jury instructions required proof that the defendants schemed to defraud by obtaining "money or property").

Lattanaphon also argues for a judgment of acquittal on Count 3 because "conspiracy" is not an enumerated felony for purposes of felony murder under 18 U.S.C. § 1111. Other defendants in this case raised this argument on appeal after the conclusion of their separate trial; the Ninth Circuit rejected this argument, concluding that the charge was lawful so long as the jury instructions required the jury to find that the defendant intended to commit robbery or attempted robbery. See United States v. Lu, 174 F. App'x 390, 395-96, (9th Cir. 2006).

Because the instructions at Lattanaphon's trial complied with
this requirement (see Jury Instructions (Docket No. 1071) at 50),
his argument is without merit.

Lastly, Lattanaphon contends that his conviction under
18 U.S.C. § 924(j) is erroneous because "no rational jury could
find . . . that [he] personally caused the death of Mr. Hong."
(Docket No. 1131 at 5:11-13.)  The Supreme Court's holding in
Pinkerton v. United States, 328 U.S. 640 (1946), however,
"renders all co-conspirators criminally liable for reasonably
foreseeable overt acts committed by others in furtherance of the
conspiracy they have joined, whether they were aware of them or
not."  United States v. Hernandez-Orellana, 539 F.3d 994, 1007
(9th Cir. 2008); see also, e.g., United States v. Curtis, 324
F.3d 501, 506 (7th Cir. 2003) (upholding a defendant's conviction
under § 924(j) pursuant to Pinkerton).  Accordingly, because the
Government adduced ample evidence that the planned robbery
involving Phnom Pich posed a reasonably foreseeable risk of death
by use of a firearm (see, e.g., Trial Tr. Oct. 17, 2007, 181:1-
183:4, 231:25-232:5), Lattanaphon's conviction on Count 3 must
stand.  See Curtis, 324 F.3d at 506 ("[I]n light of the testimony
showing that the conspirators in this case frequently resorted to
violence to achieve their goals, Curtis's argument that the
killing was not reasonably foreseeable is wholly without
merit.").

Pursuant to Federal Rule of Criminal Procedure 33,
Lattanaphon also moves for a new trial.  First, he contends that
a new trial should be granted because the Government's
presentation of evidence that Phnom Pich purchased goods in

21

interstate commerce rather than <u>sold</u> goods in interstate commerce
amounted to a constructive amendment to the indictment. (<u>See</u>
Docket No. 1131 at 5:16-25.) As discussed previously with
respect to Lattanaphon's Rule 29 motion, this argument is without
merit. Lattanaphon also argues that "permitting the jury to rely
on the taking of a store key to establish the taking of tangible
property . . . amended the indictment." (<u>Id.</u> at 5:26-6:2.) This
contention was also previously discussed with respect to Luong's
motion for a new trial, <u>see</u> <u>supra</u> Section II.C, and for the same
reasons, the court rejects Lattanaphon's argument.

Accordingly, Lattanaphon's motions pursuant to Rules 29
and 33 (Docket No. 1131) will be denied.

E.   <u>Minh Huynh's Rule 29 and Rule 33 Motions (Docket No.
     1132)</u>

Pursuant to Federal Rule of Criminal Procedure 29,
Huynh moves for a judgment of acquittal on Counts 1 through 9 of
the indictment.

Regarding Counts 1 and 2, Huynh contends that no
rational jury could find that he was guilty of these charges
beyond a reasonable doubt because "[t]he government witnesses
[who] testified as to [his] alleged involvement were admitted
accomplices who were either receiving benefits or attempting to
receive benefits for their testimony." (Docket No. 1132 at 4:9-
11.) As the court explained previously, however, it is well-
established that even "the uncorroborated testimony of a
co-conspirator is sufficient evidence to sustain a conviction
'unless the testimony is incredible or unsubstantial on its
face.'" <u>United States v. Ramirez-Robles</u>, 386 F.3d 1234, 1241

1  (9th Cir. 2004) (quoting <u>United States v. Lopez</u>, 803 F.2d 969,
2  973 (9th Cir. 1986)); <u>see</u> <u>United States v. Coleman</u>, 525 F.3d 665,
3  666 (8th Cir. 2008) ("We have repeatedly upheld jury verdicts
4  based solely on the testimony of co-conspirators and cooperating
5  witnesses, noting that it is within the province of the jury to
6  make credibility assessments and resolve conflicting
7  testimony.").  Because there is no suggestion that the testimony
8  provided by Vinh Huynh, Vanthieng Van Di, or Savutha Y was
9  "incredible or unsubstantial" as a matter of law, it remained
10 "the jury's prerogative as the finder-of-fact" to believe or
11 reject this testimony.  <u>Ramirez-Robles</u>, 386 F.3d at 1241.

12        Regarding Count 3, Huynh argues that he must be
13 acquitted of felony murder because "there is no enumerated felony
14 know[n] as conspiracy to commit robbery affecting interstate
15 commerce" under 18 U.S.C. § 1111.  (Docket No. 1132 at 5:14-17.)
16 As discussed with respect to Lattanaphon's Rule 29 motion, this
17 argument was already presented to the Ninth Circuit on an appeal
18 from a separate trial in this case.  <u>See</u> <u>supra</u> Section II.D.  The
19 Ninth Circuit rejected the argument, concluding that charge was
20 lawful so long as the jury instructions required the jury to find
21 that the defendant intended to commit robbery or attempted
22 robbery.  <u>See</u> <u>United States v. Lu</u>, 174 F. App'x 390, 395-96, (9th
23 Cir. 2006).  Because the instructions at Huynh's trial complied
24 with this requirement (<u>see</u> Jury Instructions (Docket No. 1071) at
25 50), his argument is without merit.

26        As to Count 4, Huynh asserts that he must be acquitted
27 of this charge because the Government failed to adduce sufficient
28 evidence that tangible, "personal property" was sought to

establish a conspiracy to commit Hobbs-Act robbery.  (Docket No. 1132 at 6:25-7:6.)  Whether or not intangible property, such as alarm codes, would satisfy the "personal property" element of Hobbs-Act robbery, the court finds that the Government adduced sufficient evidence that tangible property was the object of the conspiracy charged in Count 4.  See supra Section II.B. Therefore, the court must again reject this argument.

As to Count 5, Huynh appears to assert that his conviction of violating 18 U.S.C. § 924(c) cannot stand because, although Vinh Huynh testified that other members of the conspiracy were armed during the commission of the conspiracy alleged in Count 4, he did not "identify by name the individual(s) that were armed."  (Docket No. 1132 at 7:9-16.) First, there is no support for the proposition that Pinkerton liability can only be applied where the specific member of the conspiracy who violated § 924(c) is identified.  See, e.g., United States v. Escobar, 50 F.3d 1414, 1421 (8th Cir. 1995) (instructing that the "question under Pinkerton is whether any member of the conspiracy possessed heroin with the intent to distribute it on the date of the indictment" (emphasis added)). Second, Vinh Huynh's testimony provided sufficient evidence for the jury to conclude that three of Huyhn's coconspirators each used a firearm during the commission of the conspiracy alleged in Count 4:

> **Q.** When Minh from Oakland, Hung, and Vu were struggling with the intended victim, where were you?
> **A.** I was in the truck.
> **Q.** Was your engine still running?
> **A.** My engine was still running.
> **Q.** And the plan was what?

| | | |
|---|---|---|
| 1 | **A.** | The plan was to get the victim into the vehicle and |
| 2 | | drive off to somewhere.  We never was given a place to go to. |
| 3 | **Q.** | Let me stop you there.  <u>When those three individuals from your car approached the intended</u> |
| 4 | | <u>victim, were they armed?</u> |
| | **A.** | <u>They were armed, sir.</u> |
| 5 | **Q.** | What were they armed with? |
| 6 | **A.** | They were armed with the weapon that Minh provided us with.  I remember it was two 9 millimeter handguns, automatic-- |
| 7 | **Q.** | Semiautomatic? |
| | **A.** | Yes, sir. I remember.  And a .38.  .38--I can't remember if it's automatic or revolver. |
| 8 | **Q.** | A what? |
| 9 | **A.** | And another handgun that I can't remember, but I remember it was .38.  But I can't remember if it's a revolver or an automatic. |
| 10 | **Q.** | <u>So there were three guns?</u> |
| | **A.** | Yes, sir. |
| 11 | **Q.** | Were you armed inside of the vehicle? |
| | **A.** | No, sir. |
| 12 | | |

(Trial Tr. Oct. 11, 2007, 20:3-21:4 (emphasis added).)

Therefore, the court must reject this argument in support of Huynh's motion for acquittal.

Huynh's remaining argument in support of his Rule 29 motion contends that the evidence failed to satisfy the interstate commerce element of the Hobbs-Act robbery alleged in Count 1 involving Phnom Pich.  "To establish the interstate commerce element of a Hobbs Act charge," however, "the government need only establish that a defendant's acts had a <u>de minimis</u> effect on interstate commerce."  <u>United States v. Lynch</u>, 437 F.3d 902, 908 (9th Cir. 2006) (en banc).  Specifically, the Hobbs Act's interstate-nexus requirement may be satisfied "'by proof of a probable or potential impact' on interstate commerce."  <u>Id.</u> at 909 (quoting <u>United States v. Huynh</u>, 60 F.3d 1386, 1389 (9th Cir. 1995)).  In this case, the Government adduced evidence showing that Phnom Pich made purchases in interstate commerce from

companies such as RNT Diamond Importers, Meirov Brothers, Prime
Time, and Milpitas Gold & Silver, as well as a business in Hong
Kong.  (See Gov't Exs. 81, 81A, 81B, 98-102.)  Consequently, a
rational jury could find beyond a reasonable doubt that the
conspirators' theft of the keys to Phnom Pich in order to steal
the goods housed therein would have a "probable or potential
impact" on interstate commerce.

        Huynh also moves for a new trial pursuant to Federal
Rule of Criminal Procedure 33.  In support of this motion, Huynh
first argues that the court erred in admitting evidence of a
prior, uncharged robbery of a computer company in Los Angeles,
California, called PKI.  (Docket No. 1132 at 10:2-12:20.)  Huynh
specifically relies on the Ninth Circuit's decision in United
States v. Luna, 21 F.3d 874 (9th Cir. 1994).  In Luna, the Ninth
Circuit reversed the convictions of two defendants where details
of uncharged bank robberies committed in Oregon were admitted to
prove that the defendants also committed the charged bank
robberies in Fresno, California.  Id. at 875.  The Court of
Appeals found that due to "the various differences among the four
crimes" and the "generic quality of the elements the crimes did
share in common," the trial court "erred in admitting the other
crimes evidence for the purpose of showing identity."  Id. at
882.

        Here, evidence of the PKI robbery was not offered to
prove the "identity" of the perpetrators of the DFI, Amador, and
Phnom Pich robberies.  Rather, as discussed at an October 1, 2007
pre-trial hearing and as evinced at trial, the Government
presented evidence of the PKI robbery in order to demonstrate the

nature of the relationship between Luong and Huynh, an insight
which other available evidence lacked. (See Trial Tr. Oct. 1,
2007, 45:25-47:18.) Therefore, the relevance of the PKI robbery
was not based on any impermissible character-propensity theory,
see Fed. R. Evid. 404(a), and, in light of the other evidence
admitted at trial, its probative value was not substantially
outweighed by any unfair prejudice, id. 403. See United States
v. Chea, 231 F.3d 531, 534 (9th Cir. 2000) ("The 'rule is one of
inclusion' in that 'other acts evidence is admissible whenever
relevant to an issue other than the defendant's criminal
propensity.'" (quoting United States v. Mehrmanesh, 689 F.2d 822,
830 (9th Cir. 1982))). The jury was also instructed as to the
limited purpose of this evidence. (See, e.g., Jury Instructions
(Docket No. 1071) at 12-14.) Accordingly, the "interests of
justice" do not compel a new trial due to the admission of these
prior bad acts. Fed. R. Crim. P. 33.

        In support of his Rule 33 motion, Huynh also repeats
his previous argument with respect to Count 3, asserting that
"there is no enumerated felony know[n] as conspiracy to commit
robbery affecting interstate commerce" under 18 U.S.C. § 1111.
(Docket No. 1132 at 14:7-15:2.) For the reasons discussed
previously as to Huynh's Rule 29 motion, the court must again
reject this argument.

        Huynh further contends that a new trial is warranted
because the court interfered with his right to self-
representation. (Docket No. 1132 at 15:6-17:8); see Faretta v.
California, 422 U.S. 806 (1975). In addressing Huynh's previous
motion to recuse the undersigned judge, the court fully explained

why it did not interfere with Huynh's right of self

representation.  See United States v. Luong, No. 99-433, 2008 WL

1970027, at *2 (E.D. Cal. May 2, 2008).[4]  For the reasons stated

in that Order, the court rejects this argument as it pertains to

Huynh's motion for a new trial.

Huynh also demands a new trial because the Government

allegedly did not provide him with certain recorded conversations

obtained by a wiretap order issued on August 11, 1995.  (Docket

No. 1132 at 17:9-26.)  Although there are certain constitutional

prohibitions against the Government's failure to disclose

evidence to the accused, see, e.g., Brady v. Maryland, 373 U.S.

---

[4]   Specifically, the court stated:

The law requires me to explain the dangers and
disadvantages of self-representation to the defendant.
Snook v. Wood, 89 F.3d 605, 613 (9th Cir. 1996).  The
benchbook which I use (Benchbook for U.S. District
Judges, Fifth Edition 2007) was provided by the Federal
Judicial Center, and suggests that in taking a Faretta
waiver the court should "say to the defendant something
to this effect:

I must advise you that in my opinion, a
trained lawyer would defend you far better
than you could defend yourself.  I think it is
unwise of you to try to represent yourself.
You are not familiar with the law.  You are
not familiar with court procedure.  You are
not familiar with the rules of evidence.  I
strongly urge you not to try to represent
yourself.

Id., at 7. . . . [W]hatever I said did not intimidate
Minh Huynh to give up his right to self representation as
he alleges, because notwithstanding my admonitions he
elected after the Faretta colloquy to represent himself.
It was not until after he was well into the trial,
apparently recognizing his own shortcomings as a lawyer,
that he changed his mind and asked the court to allow his
advisory counsel to represent him for the remainder of
the trial.

Luong, 2008 WL 1970027, at *2.

83, 87 (1963), Huynh does not demonstrate how the recorded

conversations constituted material, exculpatory evidence for

purposes of trial.  See, e.g., United States v.

Valenzuela-Bernal, 458 U.S. 858, 874 (1982) (instructing that

there must be "some showing that the evidence lost would be both

material and favorable to the defense"); see also United States

v. Agurs, 427 U.S. 97, 109 (1976) ("[T]here is 'no constitutional

requirement that the prosecution make a complete and detailed

accounting to the defense of all police investigatory work on a

case.'" (quoting Moore v. Illinois, 408 U.S. 786, 795 (1972))).

          Furthermore, although Federal Rule of Criminal

Procedure 16(a)(1)(E) requires the Government to disclose all

evidence in its possession that is "material to preparing the

defense" or that "the government intends to use . . . in its

case-in-chief," a violation of Rule 16 does not itself require a

new trial.  See United States v. Figueroa-Lopez, 125 F.3d 1241,

1247 (9th Cir. 1997) (citing United States v. Basinger, 60 F.3d

1400, 1407 (9th Cir. 1995); United States v. Baker, 10 F.3d 1374,

1398 (9th Cir. 1993)).  To obtain a new trial, Huynh must

demonstrate "a likelihood that the verdict would have been

different had the government complied with the discovery rules."

Id.  Even assuming that the Government failed to comply with Rule

16 by not providing these recordings to Huynh, Huynh has not

indicated how the Government's compliance with Rule 16 in this

regard would have made a different verdict likely.  Therefore,

the court cannot find that a new trial would be "in the interest

of justice."  Fed. R. Crim. P. 33(a).

          Huynh further contends that a new trial is warranted

1 because of the failure of this court to sever his trial from that

2 of Luong.  Specifically, Huynh asserts that he was prejudiced by

3 the joinder due to an exhibit entered into evidence by Luong,

4 Exhibit EE, which contained the records of numerous phone calls

5 made by Luong to Huynh.  (Docket No. 1132 at 19:11-14.)  Supplied

6 with this evidence, the Government then "extracted the

7 information from the phone records and put them on a large board"

8 in order to "show the jury the connection between HUYNH and

9 LUONG."  (Id. at 19:14-19.)

10         "Generally speaking, defendants jointly charged are to

11 be jointly tried."  United States v. Escalante, 637 F.2d 1197,

12 1201 (9th Cir. 1980) (citing United States v. Gay, 567 F.2d 916,

13 919 (9th Cir. 1978)).  Jointly charged defendants should be tried

14 separately only if "a joint trial would compromise a particular

15 trial right of a properly joined defendant or prevent the jury

16 from reliably determining guilt or innocence."  United States v.

17 Cruz, 127 F.3d 791, 798-99 (9th Cir. 1997).  "The prejudicial

18 effect of evidence relating to the guilt of co-defendants is

19 generally held to be neutralized by careful instruction by the

20 trial judge."  Escalante, 637 F.2d at 1201.  Thus, a defendant

21 seeking to demonstrate that joint trial was improper "based on

22 the 'spillover' effect of evidence admitted against a

23 co-defendant" must "demonstrate the insufficiency of limiting

24 instructions given by the judge."  United States v. Nelson, 137

25 F.3d 1094, 1108 (9th Cir. 1998).

26         Here, the admission of Exhibit EE was not unfairly

27 prejudicial to Huynh, especially not to a degree that would

28 require a new trial.  Furthermore, Huynh fails to demonstrate how

30

1   the court's jury instructions were ineffective to remedy any

2   alleged "spill-over" effect resulting from his being tried

3   jointly with Luong.  (See, e.g., Jury Instructions (Docket No.

4   1071) at 3, 15, 38.)  Therefore, the court must reject this

5   argument as it pertains to Huynh's Rule 33 motion.

6         Huynh's final argument in support of a new trial

7   involves several instances of alleged prosecutorial misconduct.

8   Many of these claims were previously addressed with respect to

9   Luong's motion for a new trial, (Docket No. 1132 at 22:24-23:27);

10  see supra Section II.C, and for the same reasons the court

11  rejects them once more.  As to Huynh's additional claims of

12  prosecutorial misconduct, he asserts that during the Government's

13  rebuttal closing argument, the Government improperly "invited the

14  jury" to "cumulate evidence of each of the crimes charged, and to

15  infer a criminal disposition by HUYNH."  (Docket No. 1132 at

16  20:13-25.)  Huyhn also argues that the Government "misled the

17  jury regarding the burden of proof, and shifted the burden to the

18  defense."  (Id. at 21:1-22:23.)  After reviewing the relevant

19  portions of the trial transcript (see Trial Tr. Nov. 29, 2007,

20  119:20-120:11, 121:21-122:8, 123:7-13, 141:9-18), the court finds

21  that the Government's arguments, while perhaps evincing

22  occasional imprecision, did not amount to prosecutorial

23  misconduct.

24        Furthermore, any improper prejudice resulting from the

25  Government's statements were subsequently cured by the court's

26  instructions to the jury regarding the burden of proof and the

27  manner in which each count of the indictment must be considered.

28  (See Jury Instructions (Docket No. 1071) at 3, 6, 7, 15); see

1  also <u>United States v. Lopez-Alvarez</u>, 970 F.2d 583, 598 (9th Cir.

2  1992) ("In any event, any prejudice which might have resulted

3  from the [prosecutor's] comments was neutralized by the trial

4  judge when he instructed the jury that '[t]he lawyers' statements

5  are not evidence.'" (internal citation and quotation marks

6  omitted) (second alteration in original)).  Therefore, a new

7  trial is not warranted.  <u>See, e.g.</u>, <u>United States v.</u>

8  <u>Ramos-Oseguera</u>, 120 F.3d 1028, 1035 (9th Cir. 1997)

9  ("'Prosecutorial misconduct does not require reversal unless the

10  misconduct deprives the defendant of a fair trial.'" (quoting

11  <u>United States v. Yarbrough</u>, 852 F.2d 1522, 1539 (9th Cir.

12  1988))), <u>overruled on other grounds by</u> <u>United States v. Nordby</u>,

13  225 F.3d 1053 (9th Cir. 2000); <u>see also</u> <u>Yarbrough</u>, 852 F.2d at

14  1539 (stating that "misconduct does not require reversal when

15  there is strong evidence of the defendant's guilt").

16       Accordingly, Huynh's motions pursuant to Rules 29 and

17  33 (Docket No. 1132) will be denied.

18       F.   <u>John That Luong's Motion to Vacate Conviction for Lack</u>

19            <u>of Territorial Jurisdiction (Docket No. 1213)</u>

20       Luong moves to vacate his conviction on all counts on

21  the ground that this court lacks "territorial jurisdiction."

22  Luong's argument essentially follows four steps.  First, Luong

23  asserts that in light of <u>United States v. Morrison</u>, 529 U.S. 598

24  (2000); <u>United States v. Lopez</u>, 514 U.S. 549 (1995); and other

25  legal sources, Congress lacked authority under the Commerce

26  Clause to pass the provisions of the Hobbs Act and the Gun

27  Control Act that underlie his conviction.  Therefore, Luong

28  reasons that these provisions can only be upheld under Congress's

power to "make all needful Rules and Regulations respecting the Territory or other property belonging to the United States." U.S. Const. art. IV, § 3, cl. 2.  Consequently, Luong contends that he can only be prosecuted under these statutes if his offenses occurred in a federal territory, not a state.  All of Luong's offenses, however, occurred in the state of California.

Luong's creative argument stumbles on its first step. The overwhelming weight of authority recognizes that 18 U.S.C. § 1951(a) and 18 U.S.C. § 924(c) and (j) are permissible exercises of Congress's power under the Commerce Clause.  See United States v. DeCologero, 530 F.3d 36, 68 (1st Cir. 2008) ("The Hobbs Act's scope extends to the limit of Congress' Commerce Clause authority."); United States v. Lynch, 367 F.3d 1148, 1163 (9th Cir. 2004) (Berzon, J., concurring) ("There is . . . no basis in the Supreme Court's recent Commerce Clause jurisprudence for finding this case beyond the reach of the Hobbs Act, which all agree reaches to the boundaries of Congress's constitutional authority."); United States v. Staples, 85 F.3d 461, 463 (9th Cir. 1996) ("We agree with the Eighth Circuit that § 924(c)(1) does not exceed Congress' power under the commerce clause."). Accordingly, the court must deny Luong's motion (Docket No. 1213).

G.   John That Luong's Motion to Vacate His Conviction on Counts 4-9 for Violation of the Double Jeopardy Clause (Docket No. 1224)

Luong moves to vacate his conviction under the Hobbs Act on Counts 4, 6, and 8 on the ground that these charges violate the Double Jeopardy Clause.  Specifically, Luong argues

that these counts are unlawful because he has previously been convicted in the Northern District of California under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1966, and the predicate racketeering acts in that case consisted of the same Hobbs-Act violations.

As Luong acknowledges in his motion, this court and the Ninth Circuit have already heard and rejected this argument. United States v. Ai Le, No. 99-0433, 2003 WL 378641, at *2-4 (E.D. Cal. Feb. 14, 2003), aff'd sub nom. United States v. Luong, 393 F.3d 913, 915 (9th Cir. 2004) ("We conclude that the government was not barred from successively prosecuting Le and Luong for violations of RICO and for conspiracy to commit a Hobbs Act robbery when one of the RICO predicate acts was a conspiracy to commit Hobbs Act robberies."), cert. denied, 544 U.S. 1006 (2005).  Accordingly, Luong's motion (Docket No. 1224) will be denied.

H.   John That Luong's Motion to Vacate His Conviction on All § 924(c) Counts (Docket No. 1226)

Luong moves to vacate his conviction on all counts alleging violations of 18 U.S.C. § 924(c) on the ground that he cannot be subject to coconspirator liability under that provision pursuant to Pinkerton.  Although the Ninth Circuit has expressly held that § 924(c) may be applied pursuant to Pinkerton, see United States v. Allen, 425 F.3d 1231, 1234 (9th Cir. 2005), Luong argues that this precedent is contrary to Congress's intent because it would render another provision of the statute, 18 U.S.C. § 924(o), superfluous.  Section 924(o) provides that "[a] person who conspires to commit an offense under subsection (c)

34

shall be imprisoned for not more than 20 years, fined under this title, or both."

Luong's interpretation of the statute is flawed. Section 924(o) punishes persons who conspire to violate § 924(c), which is distinct from imposing <u>Pinkerton</u> liability on a person who conspires to violate 18 U.S.C. § 1151(a), but whose coconspirators violate § 924(c). "In the latter case, the offender is subject to a form of vicarious liability resulting from his participation in the more general conspiracy; in the former, the liability is direct and results from a specific conspiracy to violate § 924(c)." <u>United States v. Hunter</u>, 982 F. Supp. 541, 544 n.6 (N.D. Ill. 1997). Thus, "[n]o redundancy is created by applying . . . the <u>Pinkerton</u> doctrine to § 924(c)." <u>Id.</u> Accordingly, this motion (Docket No. 1226) will also be denied.

I. <u>John That Luong's Motion to Vacate His Conviction on All § 924(c) and (j) Counts (Docket No. 1227)</u>

Luong moves to vacate his conviction on Counts 2, 3, 5, 7, and 9 on the ground that 18 U.S.C. § 924(c) and (j) are unconstitutional as applied to this case. Section 924(c) prohibits any person from using or carrying a firearm "during and in relation to any crime of violence or drug trafficking crime . . . for which the person may be prosecuted in a court of the United States," while § 924(j) punishes "[a] person who, in the course of a violation of subsection (c), causes the death of a person through the use of a firearm."

In his motion, Luong references 18 U.S.C. § 23, which provides that "the term 'court of the United States' includes the

35

District Court of Guam, the District Court for the Northern
Mariana Islands, and the District Court of the Virgin Islands."
He then interprets the word "includes" to mean "is limited to" in
order suggest that violations of § 924(c) and § 924(j) are
punishable only if the offenses occur in Guam, the Northern
Mariana Islands, or the Virgin Islands.  Luong's interpretation
is contrary to the plain meaning of the statute.  See Black's Law
Dictionary (8th ed. 2004) (defining "include" as "[t]o contain as
part of something" or "indicat[ing] a partial list").
Accordingly, this motion (Docket No. 1227) will be denied as
well.

      J.     John That Luong's Motion to Prevent Cumulative
              Punishment on All § 924(c) and § 1951(a) Counts (Docket
              No. 1228)

      Luong moves to vacate his conviction on all counts
alleging violations of 18 U.S.C. § 924(c) and 18 U.S.C. § 1951(a)
on the ground that they constitute unlawful cumulative
punishments.  Luong first correctly notes that while the §
1951(a) counts may constitute lesser-included offenses of the §
924(c) counts pursuant to Blockburger v. United States, 284 U.S.
299 (1932), this fact alone does not render these charges
impermissibly cumulative.  See United States v. Powell, 894 F.2d
895, 899-900 (7th Cir. 1990) ("[W]here cumulative punishment
under two statutes is specifically authorized, regardless of
whether these two statutes create the 'same offense' under the
Blockburger test, 'the prosecutor may seek and the trial court or
jury may impose cumulative punishment under such statutes in a
single trial.'" (quoting Missouri v. Hunter, 459 U.S. 359, 366

36

1  (1983))).   Luong further acknowledges that § 924(c)specifically

2  provides for punishment "in addition to the punishment provided"

3  by the underlying crime of violence, which in this case is the

4  violation of § 1951(a).   18 U.S.C. § 924(c)(1)(A) (emphasis

5  added).   Luong contends, however, that cumulative punishments are

6  not authorized where a § 924(c) violation is predicated upon

7  coconspirator liability pursuant to Pinkerton.

8          The Seventh Circuit specifically addressed this

9  argument in Powell and concluded that § 924(c) permits cumulative

10 punishments even where the § 924(c) violation is premised upon

11 Pinkerton liability.   894 F.2d at 900-01, cited with approval in

12 United States v. Smith, 962 F.2d 923, 933 (9th Cir. 1992).

13 Because the Ninth Circuit acknowledges that § 924(c) authorizes

14 cumulative punishment and that § 924(c) may be applied pursuant

15 to Pinkerton, see Smith, 962 F.2d at 933; United States v. Allen,

16 425 F.3d 1231, 1234 (9th Cir. 2005), this court, like the Seventh

17 Circuit in Powell, sees no reason to conclude that only one of

18 these legislative purposes may be furthered in a particular case.

19 Accordingly, this motion (Docket No. 1226) will also be denied.

20     K.   Hoang Ai Le's Motion to Vacate Conviction on Counts 8

21          and 9 for Violation of the Double Jeopardy Clause

22          (Docket No. 1240)

23          Le moves to vacate his conviction on Counts 8 and 9 on

24 the ground that these charges violate the Double Jeopardy and Due

25 Process Clauses.   As with Luong's motion (Docket No. 1224)

26 discussed in Section II.G, supra, this court and the Ninth

27 Circuit have already heard and rejected these arguments.   United

28 States v. Ai Le, No. 99-0433, 2003 WL 378641, at *2-4 (E.D. Cal.

Feb. 14, 2003), aff'd sub nom. United States v. Luong, 393 F.3d

913, 915 (9th Cir. 2004), cert. denied, 544 U.S. 1006 (2005).

Accordingly, Le's motion (Docket No. 1240) will be denied.

   IT IS THEREFORE ORDERED that:

(1) Hoang Ai Le's Rule 29 and Rule 33 Motions (Docket No.
   1122) be, and the same hereby are, DENIED;

(2) John That Luong's Rule 29 Motion (Docket No. 1129) be,
   and the same hereby is, DENIED;

(3) John That Luong's Rule 33 Motion (Docket No. 1130) be,
   and the same hereby is, DENIED;

(4) Thongsouk Lattanaphon's Rule 29 and Rule 33 Motions
   (Docket No. 1131) be, and the same hereby are, DENIED;

(5) Minh Huynh's Rule 29 and Rule 33 Motions (Docket No.
   1132) be, and the same hereby are, DENIED;

(6) John That Luong's Motion to Vacate Conviction for Lack
   of Territorial Jurisdiction (Docket No. 1213) be, and
   the same hereby is, DENIED;

(7) John That Luong's Motion to Vacate His Conviction on
   Counts 4-9 for Violation of the Double Jeopardy Clause
   (Docket No. 1224) be, and the same hereby is, DENIED;

(8) John That Luong's Motion to Vacate His Conviction on
   All § 924(c) Counts (Docket No. 1226) be, and the same
   hereby is, DENIED;

(9) John That Luong's Motion to Vacate His Conviction on
   All § 924(c) and (j) Counts (Docket No. 1227) be, and
   the same hereby is, DENIED;

(10) John That Luong's Motion to Prevent Cumulative
   Punishment on all § 924(c) and § 1951(a) Counts (Docket

No. 1228) be, and the same hereby is, DENIED; and

(11) Hoang Ai Le's Motion to Vacate Conviction on Counts 8 and 9 for Violation of the Double Jeopardy Clause (Docket No. 1240) be, and the same hereby is, DENIED.

The United States Attorney shall take the necessary steps to have this matter placed on the court's calendar for judgment and sentencing after all parties have had an opportunity to file any objections to the findings in their respective presentence reports.

DATED:  May 14, 2009

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE